IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LINDA L. CLARK, et al, | ) | Civil No. 03-340-JE |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| CAPITAL CREDIT & COLLECTION | ) | |
| SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiffs Linda Clark and Jerry Clark seek an award of attorney's fees in the amount

of $192,567.50 and costs in the amount of $5,720.01 from defendants Capital Credit &

Collection Services, Inc. (Capital Credit); Janine Brumley, an employee of Capital Credit

(collectively "Capital Credit defendants"); and Jeffrey Hasson.[1]

_____

[1]These amounts, requested in plaintiffs' reply memoranda, are reduced from the
$240,042.50 in attorney's fees and $6,480.82 in costs which plaintiffs originally sought.
Plaintiffs correctly concede that they are not entitled to recover attorney's fees for work
performed during the appeal, and withdraw 189.1 hours from their lodestar calculation.  See Fed.
R. App. P. 39-1.8.  They also concede that they are not entitled to recover the $503.51 expended
for copying and mailing their appellate briefs.

## BACKGROUND

The background to this action is fully set out in an Opinion and Order filed by this court, Clark v. Capital Credit, CV 03-340 (D. Or. Jan. 4, 2004), and in a decision by the Ninth Circuit Court of Appeals, Clark v. Capital Credit, 460 F.3d 1162 (9th Cir. 2006). I will therefore review the background only briefly here.

Plaintiffs filed this action in March, 2003, alleging that defendants had violated various provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq., and the Oregon Unfair Debt Collection Practices Act (UDCPA), O.R.S. § 646.639 et seq. On their federal claim, plaintiffs sought recovery of $150,000 in general damages, recovery of the "actual damages," and statutory damages in the amount of $1,000 from each defendant for each plaintiff. On their state claim, plaintiffs sought recovery of their actual damages, or, in the alternative, $200 from each defendant. Plaintiffs sought punitive damages on the state claim, and sought recovery of attorney's fees and costs under both claims.

In an Opinion and Order filed on January 23, 2004, I denied plaintiffs' motion for partial summary judgment, granted defendant Hasson's motion for summary judgment, and granted the Capital Credit defendants' motion for summary judgment as to most of plaintiffs' claims. I denied the Capital Credit defendants' motion for summary judgment on plaintiffs' claim that was based upon a telephone call defendant Brumley made to Ms. Clark on July 30, 2002. Though I concluded that plaintiffs had waived objection to the call itself because Ms. Clark had telephoned defendant Hasson's office seeking additional information, I concluded that material issues of fact existed as to the scope and nature of defendant Brumley's communication with Ms. Clark during the call.

On February 10, 2004, before the remaining issue was tried, plaintiffs filed a notice of appeal of this decision to the Ninth Circuit Court of Appeals. On February 23, 2004, after plaintiffs' counsel had expended 21.8 hours of work on the appeal, plaintiffs moved to dismiss the appeal. I granted the motion. Plaintiffs now assert that they were required "to resolve the residual claim at trial as a predicate to appeal" because defendants would not "accept[] appeal without trial of the residual claim. . . ." Plaintiffs' memorandum in support of motion for attorney's fees at 7. They further assert that the "first appeal sought to avoid trial of the residual issue for which defendants now dispute liability." Plaintiffs' reply memo in support of motion for attorney's fees at 6.

Plaintiffs' remaining claim was tried in a three-day jury trial that concluded with a defense verdict on May 28, 2004. A judgment and amended judgment were subsequently entered in defendants' favor, and costs in the amount of $1,794.50 were awarded in defendants' favor. Defendants' motion to recover attorney's fees was denied.

Plaintiffs appealed, and defendants cross-appealed. Plaintiffs appealed the rulings on the parties' cross motions for summary judgment, and defendants appealed the denial of their motion to recover attorney's fees.

In two separate opinions filed on August 24, 2006, the Ninth Circuit Court of Appeals affirmed in part, reversed in part, and remanded the action to this court for further proceedings. In a Memorandum opinion, the Court of Appeals affirmed the granting of summary judgment in the defendants' favor as to plaintiffs' claims brought pursuant to 15 U.S.C. §§ 1692g(b) and 1692e(3) and pursuant to the UDCPA, and affirmed the denial of defendants' motion to recover attorney's fees. In a published opinion, the Court of Appeals affirmed this court's conclusion that defendant Hasson could not be liable for defendant

Brumley's July 30, 2002 telephone call to plaintiff Linda Clark, but reversed as to the

conclusion that Ms. Clark had necessarily waived objection to the call.  The Court of

Appeals also reversed the grant of summary judgment on plaintiffs' claim that defendants

violated 15 U.S.C. § 1692e(2)(a), which prohibits false representation of "the character,

amount, or legal status of any debt," and as to plaintiffs' claim under §§ 1692d, 1692f(1), and

1692g(a)(1).  The Court of Appeals also concluded that this court had erred in failing to

evaluate the merits of plaintiffs' motion to compel before addressing the merits of the parties'

motions for summary judgment.  In the conclusion of its published opinion, the Court of

Appeals noted that

> This case presents a complicated web of problems that has required us to
> address a litany of issues for which there is a dearth of applicable precedent.

Clark, 460 F.3d at 1179.

On November 8, 2007, after the action was remanded to this court, the parties

resolved the substantive portion of their dispute during a settlement conference conducted by

Magistrate Judge Thomas Coffin.  Under the terms of the settlement, defendant Hasson

agreed to pay plaintiffs $7,500, and the Capital Credit defendants agreed to pay plaintiffs

$7,500.  The parties agreed that defendants would present plaintiffs an offer of judgment

reflecting these amounts, that plaintiffs would accept the offer, and that a judgment

dismissing this action with prejudice would ultimately be entered.  The agreement provided

that an outstanding bill of costs in the approximate amount of $1,800, which had been

pending since a judgment was rendered in defendants' favor before the appeal, would be

deemed satisfied.  The agreement further provided that plaintiffs could seek an award of

plaintiffs' reasonable attorney's fees and costs, and that I would determine the amount of fees

and costs that would be awarded.  Judge Coffin agreed with Hasson's counsel's assertion that

the petition for fees and the request for costs would be divided into two parts, separately specifying the amounts sought from the Capital defendants and the amounts sought from defendant Hasson.  Judge Coffin also agreed with plaintiffs' counsel's request that he be allowed to request fees and costs from all defendants in a single petition which separated the amounts sought from Hasson and the Capital Credit defendants.  Plaintiffs agreed that they would not seek recovery of attorney's fees for any services performed after November 8, 2007.

Plaintiffs subsequently filed a single bill of costs and motion for attorney's fees which did not separate the amounts sought from defendant Hasson from the amounts sought from the Capital Credit defendants.  In addition, except as to the time spent responding to defendants' motions for summary judgment, plaintiffs did not segregate the time expended related to defendant Hasson from time expended related to the Capital Credit defendants in either counsel's billing records or the memoranda supporting the motion to recover attorney's fees.  Plaintiffs now assert that "segregation of attorney time is not feasible because common issues of discovery and claims rely, in part, upon vicarious liability of Capital Credit for collection activity by Hasson."  Plaintiffs' memorandum in support of motion for attorney's fees at 6.  They add that "billing statements filed in support of an award of attorney's fees by defense counsel provide an inference that there was a collaborative defense effort that mitigates in favor of joint and several liability."  Id.  Notwithstanding Judge Coffin's instruction that they separate the fees and costs sought from defendant Hasson from those sought from the Capital Credit defendants, plaintiffs now "request a single award and joint and several liability for attorney fees."  Plaintiffs' reply memo in support of motion for attorney's fees at 7.  They add that, "[t]o the extent joint and several liability is not available,

each defendant contributed to the totality of the attorney time incurred, each contributed proportionately to common tasks, each contributed proportionately to settlement and there is a presumption of 50% liability for each." Id.

I. Attorney's fees

A. Factors considered in determining amount of attorney's fees award

Determination of the amount of attorney's fees that should be awarded begins with calculation of the "lodestar" figure derived by multiplying the number of hours the prevailing party reasonably expended on the litigation by the reasonable hourly rate.  E.g., Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).  The "lodestar" amount may then be adjusted by those "Kerr factors" that have not been subsumed into the lodestar calculation. Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir. 1993); see Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975).  These factors include the time and labor required; the skill required to provide the legal services; the preclusion of other employment caused by acceptance of the case; the customary fee; the limitations imposed by the client  or the case; the amount in controversy and the results obtained; the experience, reputation, and ability of counsel; the undesirability of the case; the nature of the professional relationship with the client; and awards in similar actions.[2]

In determining a reasonable hourly rate, courts consider the prevailing rates in the community for similar legal services.  Intel, 6 F.3d at 622.  In this district, courts consider the Oregon State Bar Economic Survey as an initial benchmark in determining whether a

_____

[2]Whether the fees are contingent or fixed is no longer a consideration.  See, e.g., City of Burlington v. Dague, 505 U.S. 557, 564 (1992).

requested hourly rate is reasonable. <u>Roberts v. Interstate Distributor Co.</u>, 242 F.Supp. 2d 850, 857 (D. Or. 2002).

In fixing a reasonable fee award, the most critical factor is the degree of success that the prevailing party obtained. <u>Farrar v. Hobby</u>, 506 U.S.103, 114 (1992). If a plaintiff has obtained excellent results, his attorney should recover fees that fully compensate for the work performed. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983). However, if a plaintiff has not succeeded on all claims, the court has discretion to reduce the "lodestar" calculation. <u>Schwarz v. Secretary of Health and Human Services</u>, 73 F.3d 895, 901 (9th Cir. 1995). Where plaintiff has succeeded on only some of the claims, the court must consider whether the failed claims were unrelated to the claims that were successful, and whether the plaintiffs " 'achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]'" <u>Id.</u> (quoting <u>Hensley</u>, 461 U.S. at 434). If the successful and unsuccessful claims are "distinctly different," the hours devoted to the unsuccessful claims should be excluded, because work on an unsuccessful claim cannot be deemed to have been expended in pursuit of an ultimately successful result. <u>Id.</u> If the claims are related, the court focuses on the significance of the overall relief the plaintiff obtained in relation to the hours reasonably expended, and should not reduce attorney's fees awarded simply because the plaintiff did not prevail on every contention. <u>Id.</u> (<u>citations omitted</u>). Full compensation may be appropriate if the plaintiff obtained excellent results, but may be excessive if the plaintiff's success was limited. <u>Thorne v. City of El Segundo</u>, 802 F.2d 1131, 1141 (9th Cir. 1986).

There is no precise method for determining the amount of attorney's fees that a partially successful plaintiff should recover. <u>Hensley</u>, 461 U.S. at 436. A district court may attempt to determine particular hours that should be eliminated from the lodestar calculation

for claims upon which the plaintiff was unsuccessful, or "may simply reduce the award to account for the limited success."  Id. at 436-37.  See also Schwartz, 73 F3d at 906 (district court has authority "to make across-the-board percentage cuts" in the number of hours claimed "as a practical means of trimming the fat from a fee application").

The party seeking an award of attorney's fees bears the burden of establishing entitlement to an award and documenting the time expended and the hourly rates.  Hensley, 461 U.S. at 437.  Billing records should be maintained in a manner that allows the reviewing court to identify distinct claims.  Id.


B. Determining the amount of attorney's fees plaintiffs should recover in this action

1. Issues complicating determination of attorney's fee award

Though there is no question that plaintiffs are entitled to recover their reasonable attorney's fees in this action pursuant to the parties' settlement agreement, several factors make it difficult to determine the appropriate amount that defendant Hasson and the Capital Credit defendants should pay.  The first of these is plaintiffs' failure to segregate the amounts sought from each of these defendants.  As noted above, as recited by Judge Coffin, the settlement agreement allowed plaintiffs to seek fees in a single motion, but required plaintiffs to separately identify the amount sought from defendant Hasson from the amount sought from the Capital Credit defendants.

Plaintiffs now seek a "single award and joint and several liability for attorney fees," and argue that, to the extent such liability "is not available," defendant Hasson and the Capital Credit defendants should each be responsible for 50% of the fees because "each contributed proportionately to common tasks, each contributed proportionately to the

settlement and there is a presumption of 50% liability for each."  However, these assertions

are contrary to the factual record before the court and are legally unsupportable.  Though

there was some overlap of issues between defendant Hasson and the Capital Credit

defendants, plaintiffs alleged more unlawful conduct on the part of the Capital Credit

defendants, and devoted more time to litigating claims against those defendants.  Plaintiffs

provide no support for their assertion that there is a "presumption" that Hasson's liability is

equal to that of the Capital Credit defendants, and both this court and the Ninth Circuit Court

of Appeals concluded that Hasson was not liable for the Capital Credit defendants' conduct.

Moreover, the trial in this action, for which plaintiffs' counsel billed 174.3 hours of attorney

work and 2.6 hours of work by a legal assistant, concerned only the Capital Credit

defendants.   Requiring the Capital Credit defendants to pay for at least some of this time,

even though they prevailed, is arguably reasonable because plaintiffs could not appeal my

decisions concerning the parties' cross motions for summary judgment without first trying the

remaining claim.  However, there is no basis for requiring defendant Hasson to pay for any

portion of a trial during which no claims against him were tried.

        In addition, as is also noted above, the summary of time expended and the billing

records submitted by plaintiffs generally fail to distinguish the time expended as to particular

defendants.  Further complicating calculation of the appropriate award as to defendants

Hasson and the Capital Credit defendants is plaintiffs' counsel's frequent use of a disfavored

"block billing" method[3] of accounting for time expended that does not segregate by task the

time devoted to the various issues counsel worked on during a particular day.  For example,

---

        [3]See Frevach Land Co. v. Multnomah County, 2001 WL 34039133 *2-6 (D. Or.
2001)(noting difficulty of determining time spent on particular tasks and reasonableness of time
expended posed by "block billing").

Order - 9

as defendant Hasson notes, plaintiffs' counsel's billing entry number 53 states that 6.00 hours

are billed for the following work:

> Review file. Draft letter to clerk. Draft and edit request for production,
> interrogatories, requests for admissions. Review documents. Calendar
> deadlines. Research re mental health records. OJIN search. FDCPA
> research.

While this billing method, reflected in dozens of the entries in plaintiffs' counsel's billing

records is probably sufficient for billing a client, the records are particularly difficult to

analyze in connection with an award of attorney's fees against multiple defendants. It is

impossible to determine how much time was devoted to various tasks, whether the time

allocated to a task was reasonable, how much time was devoted to claims that failed, whether

the time spent on claims that failed was related to claims that did not, and how much time

was expended litigating issues related to defendant Hasson as opposed to litigating issues

related to the Capital Credit defendants. This problem is compounded by dozens of counsel's

billing entries describing the relevant tasks only in generic terms such as "telephone call" to

or from client or opposing counsel or other individuals, "conference," or "email" to/from

client without identifying the subject or issue of the communication.[4]

Determination of the appropriate amount of the recovery is also complicated by the

difficulty in evaluating the degree to which plaintiffs succeeded in this matter. The $15,000

that plaintiffs recovered is modest both in relation to $150,000 in general damages,

unspecified "actual damages," statutory damages, and punitive damages that plaintiffs

sought, and in relation to $192,567.50 in attorney's fees now sought. Though the action was

---

[4]Plaintiffs assertion that their counsel's billing records are more precise than those that
defendants' counsel submitted when defendants sought to recover attorney's fees earlier in this
action is irrelevant, because I denied defendants' request to recover attorney's fees in its entirety.
In doing so, I was not required to, and did not reach, the question whether counsels' records were
sufficiently specific.

reversed in part and remanded for further proceedings, plaintiffs were not successful in the one issue that was tried, no judicial determination as to the validity of the debt in question was ever made, and the Ninth Circuit Court of Appeals affirmed this court's grant of summary judgment as to a number of federal claims and as to plaintiffs' state claim, which had provided the only possibility of an award of punitive damages. Nevertheless, a recovery of $15,000, plus removal of an obligation to pay approximately $1,800 in costs assessed earlier, is significant, and the Ninth Circuit resolved certain important legal issues in a manner favorable to plaintiffs in this action and to others who might bring similar actions in the future challenging the conduct of debt collectors.

 In addition to these problems, based upon a careful review of the billing records, I am convinced that some of the billing records indicate the expenditure of more time than could be reasonably charged to the defendants for certain tasks, even if plaintiff had been wholly successful on the claims supported by that work. Most notable in this regard is the 232.8 hours that plaintiffs' counsel billed for work on plaintiffs' motion for partial summary judgment. Though I denied that motion, and the denial was summarily affirmed by the Ninth Circuit Court of Appeals, there is no question that some of the work counsel devoted to the motion was related to claims that did not fail, but were resolved by settlement. However, defendant could not reasonably be required to compensate plaintiff for nearly six weeks of full-time attorney work on their unsuccessful motions for partial summary judgment. If it were possible to accurately calculate the amount of time reasonably devoted to the claims that did not fail in this action by carefully scrutinizing the billing records, I would substantially reduce the number of hours of work on plaintiffs' unsuccessful motions for partial summary judgment in fixing the appropriate lodestar amount. Because it is not, I will

Order - 11

simply consider what I conclude is the excessive number of hours devoted to that task in making the percentage calculations below.  In making those calculations, I will likewise consider the 21.8 hours plaintiffs' counsel expended seeking an untimely appeal after this court issued its opinion and order concerning the parties' cross motions for summary judgment.  Though plaintiffs assert that they sought to avoid trial of a "residual issue" before appeal, an appeal was simply not timely until a final judgment was entered as to all claims.

Finally, calculation of the appropriate reasonable attorney's fees that plaintiff should recover is complicated by the plaintiffs' counsel's inclusion of time expended on clerical or secretarial tasks in the time billed for work performed by counsel (at $250 per hour) or by his legal assistant (at $75 per hour).  The billing records indicate that counsel has billed at attorney rates for photocopying; serving, filing, and delivering documents; organizing and sorting files; arranging for a notary; scheduling and confirming appointments and court reporters; traveling to the courthouse to file documents; and traveling to deliver materials to witnesses, opposing counsel, and the court.  These tasks do not require legal expertise, and should not be billed at attorney rates, whether or not they are performed by attorneys.  See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 n 10 (1989).  Accordingly, I will consider this issue in determining the award of attorney's fees.

2. Analysis

With these issues in mind, I turn to calculation of the appropriate amount of the award of attorney's fees.

After reducing their request for fees to reflect deletion of the hours expended on their second appeal, plaintiffs now seek to recover $192,567.50.  This total is based upon 765.5

hours of attorney work at the rate of $250 per hour, and 15.9 hours of work by a legal assistant at the rate of $75 per hour.

Based upon a careful review of the materials submitted by the parties, I conclude that an hourly rate of $200 per hour is appropriate for an attorney of plaintiffs' counsel's skill and experience performing the kind of work required by this litigation in the Portland legal market during the relevant period.  This is the hourly rate that Judge Panner awarded for the work of the same counsel in Hooper v. Capital Credit, CV 03-793-PA, 2005 WL 1899380 (D. Or.) for similar work.  In Hooper, as in the present action, the plaintiff challenged efforts to collect debts which the Evans & Sullivan Clinic asserted were owed.  The $200 per hour fee that Judge Panner awarded in Hooper is very close to the $197 per hour average rate charged by Portland area attorneys during this period.  In determining the fee award, I will use the $200 per hour rate for attorney work and the $50 per hour rate for paralegal work that Judge Panner applied.

For the reasons discussed above, determining the amount of the attorney's fees plaintiffs should recover from each defendant in this action is difficult.  Counsel's use of "block billing," failure to separately specify the amounts sought from the different defendants as required by the settlement agreement, inclusion of administrative tasks in the work billed as attorney time, and billing of excessive hours as to some tasks makes it impossible to precisely calculate the total time reasonably devoted to this litigation.  However, based upon a careful review of the record, it is my best estimate that, had plaintiffs been fully successful, they would be entitled to recover for 600 hours of work by counsel and 12 hours of paralegal work, because that is the number of hours that could have been reasonably expended in

achieving that success.  This would have resulted in a recovery of $120,600 in attorney's fees.

Because the degree of success that a prevailing party has achieved is a critical factor in determining a reasonable fee award, some reduction must be made to reflect plaintiffs' failure to prevail on a number of claims whose elimination at the district court level was affirmed by the Ninth Circuit Court of Appeals, and to reflect the modest recovery that plaintiffs secured in the settlement.  Though some of the claims that were still viable when the parties settled this dispute were related to claims that had been eliminated earlier, not all the claims were related, and the relationship of some of the viable and extinguished claims was tenuous.  In addition, though plaintiffs were required to try the single issue remaining after resolution of the parties' cross motions for summary judgment, some reduction of the time expended on that trial is appropriate because the trial resulted in a verdict in favor of the Capital Credit defendants.  Further, the $15,000 plaintiffs obtained in settlement is less than 10% of the $150,000 in general damages, unspecified actual and punitive damages, and statutory damages they had sought.

There is, of course, no precise formula or method for calculating the appropriate reduction based upon the size of recovery and the elimination of a significant portion of plaintiffs' claims before settlement.  In the absence of such a formula or method, I conclude that the amount of attorney's fees that would otherwise be appropriate should be reduced by 40% based upon the degree of success plaintiffs achieved.  This reduction reflects the limited amount of plaintiffs' recovery and the elimination of a significant portion of plaintiffs' claims, including the claim upon which punitive damages were sought.  It also reflects the degree to which plaintiffs' unsuccessful claims related to those that were viable following the appeal,

and the significance of the Court of Appeals' resolution of certain legal issues in a manner favorable to these plaintiffs and others who might challenge debt collectors' conduct in the future.

Applying a 40% reduction to the $120,600 in attorney's fees that I would have awarded if plaintiffs had been fully successful, plaintiffs are entitled to recover attorney's fees in the amount of $72,360.

3. Apportionment of fees between defendant Hasson and the Capital Credit defendants

As noted above, I disagree with plaintiffs' assertions that defendants Hasson and the Capital Credit defendants are jointly and severally liable for the plaintiffs' attorney's fees, and that they should each be held 50% liable for plaintiffs' attorney's fees if joint and several liability is not imposed. Both this court and the Court of Appeals rejected the assertion that defendant Hasson could be liable for the conduct of the Capital Credit defendants, and there is no question that plaintiffs devoted substantially more time to the litigation against the Capital Credit defendants than to litigation against defendant Hasson.

Because the defendants are not jointly and severally liable for either plaintiffs' claims or for attorney's fees and costs, I must determine the share of attorney's fees for which they are separately liable. This task might have been performed more precisely if plaintiffs' counsel had consistently recorded his time in a manner that distinguished between the defendants, and plaintiffs should have separated the claim for attorney's fees in the fee petition as directed by Judge Coffin. However, based upon an understanding of this action developed over the many years this litigation has been pending and upon my present review of the record, I am confident that allocating 1/3 of the fees and costs to defendant Hasson and

2/3 of the fees and costs to the Capital Credit defendants fairly approximates the amount of time plaintiffs' counsel devoted respectively to these defendants.  Plaintiffs complained of conduct on the part of the Capital Credit defendants that started before defendant Hasson's involvement in the attempt to collect the alleged debt, and continued after defendant Hasson was no longer involved.  The conduct complained of involving Capital Credit defendants was more extensive than the conduct of defendant Hasson complained of, and plaintiffs' counsel devoted nearly 175 hours to a trial that involved the Capital Credit defendants and did not involve defendant Hasson.  Under these circumstances, I am satisfied that a 1/3 allocation to defendant Hasson and a 2/3 allocation to the Capital Credit defendants fairly divides the responsibility for plaintiffs' attorney's fees.

Applying this allocation to the $72,360 fee that plaintiffs should recover renders defendant Hasson responsible for attorney's fees in the amount of $24,120 and the Capital Credit defendants responsible for attorney's fees in the amount of $48,240.

II. Costs

As noted above, plaintiffs now seek recovery of costs in the amount of $5,720.01, for which they assert defendants are jointly liable.  For the reasons set out elsewhere in this order, defendants are not jointly liable for attorney's fees and costs.  In concluding that plaintiffs are entitled to an award of reasonable attorney's fees, I have determined that plaintiffs' failure to separate the amount of fees sought from defendant Hasson from the amount of fees sought from the Capital Credit defendants does not warrant denial of an award of fees, but instead necessitates this court's allocation of defendants' responsibility for the amount awarded.  I reach the same conclusion as to the award of costs, and will divide

defendants' responsibility for those expenses in the same ratio of 1/3 to defendant Hasson and 2/3 to the Capital Credit defendants as I applied to the attorney's fees.

Based upon my review of the original Bill of Costs, the parties' memoranda concerning taxation of costs, and the Federal Rules of Appellate Procedure, I conclude that plaintiffs are not entitled to recover costs and fees incurred on appeal.  Under Fed. R. App. P. 39a(4), if a judgment is affirmed in part, reversed in part, modified, or vacated on appeal, costs are taxed only as "the court" orders.  In the context of this Rule, "the court" referenced is clearly the Court of Appeals.  Under Fed. R. App. P. 39e, certain costs on appeal are taxable in the District Court "for the benefit of the party entitled to costs under this rule . . . ." These include the costs of preparing and transmitting the record, transcripts needed to determine the appeal, premiums paid for a supersedeas bond, and the fee for filing the notice of appeal.  In the context of this Rule, a "party entitled to costs under this rule" refers to a party entitled to recover costs under Rule 39a(4).  Here, plaintiffs are not such parties: Because the Court of Appeals affirmed in part and reversed in part, under Rule 39a(4), costs were to be taxed only as the Court of Appeals ordered.  Because the Court of Appeals did not order that any costs be taxed, plaintiff was not a "party entitled to costs" under Rule 39e, and this court cannot award plaintiffs any of the costs enumerated under that Rule.  This means that the $3,059.11 in costs and fees associated with plaintiffs' appeal, which plaintiffs have included in the bill of costs, is not recoverable.

With the elimination of these items, plaintiffs are entitled to recover the following costs:

       1.  $   150.00 filing fee

       2.  $    75.00 service fee

      3.  $   487.00  transcript of Janine Brumley's deposition

      4.  $   153.70 transcript of April Kahan

      5.  $   773.75  transcripts of plaintiffs' depositions

      6.  $   995.00  fees for exemplification and photocopying

Total     $2,634.45

The $527.96 that plaintiffs seek for facsimile, parking and mileage, and postage is not recoverable because these expenses are not specified in 28 U.S.C. § 1920. This court does not have authority to tax expenses not enumerated in that section.

The Capital Credit defendants are liable for costs in the amount of $1,756.30, and defendant Hasson is liable for costs in the amount of $878.15.

## CONCLUSION

For the reasons set out above, plaintiffs are entitled to recover attorney's fees in the amount of $24,120 and costs in the amount of $878.15 from defendant Hasson. Plaintiffs are entitled to recover attorney's fees in the amount of $48,240 and costs in the amount of $1,756.30 from the Capital Credit defendants.

DATED this 11th day of June, 2008.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge